# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 94 C 6343 | **DATE** | 9/10/2001 |
| **CASE TITLE** | Okoro vs. Bohman | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due _____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons set forth on the attached order, the federal defendant's motion for summary judgment is granted in part and denied in part (124); and defendants Callaghan and DeLeonardis' motion for summary judgment is granted in part and denied in part (121). The claims against Jack Derive are dismissed pursuant to Rule 4(m). The date for filing the pretrial order is extended to 10/12/01. Status hearing set to 9/21/01 at 9:30 a..m. for the purpose of addressing whether the plaintiff is entitled to a jury trial on his remaining claim.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | number of notices | Document Number |
|---|---|---|---|---|
| | No notices required. | | | |
| | Notices mailed by judge's staff. | | SEP 1 4 2001 | 143 |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | EB | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| OR6 | courtroom deputy's initials | 01 SEP 13 PM 3: 14 Date/time received in central Clerk's Office | date mailed notice mailing deputy initials | |


DOCKETED
SEP 14 2001

RALPHAEL OKORO,

        Plaintiff,

v.

AGENT RANDALL BOHMAN, et al.,

        Defendants.

Case No. 94 C 6343

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Raphael Okoro, who is currently serving time for conspiracy and distribution of heroin, has sued two DEA agents (Randall Bohman and Daniel Dodds), two members of the Chicago Police Department (William Callaghan and Anthony DeLeonardis), and a confidential informant who worked with the CPD (Jack Derive), alleging that they stole, during the search of his house incident to his arrest, precious gemstones worth roughly $96,000 and his wallet, which contained $200 (the wallet was later returned through the mail, without the $200). Okoro seeks the return of the stones and the money, or alternatively damages under either Rule 41(e) or under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 433 U.S. 388 (1971).

The DEA agent defendants (Bohman and Dodds) and the CPD defendants (Callaghan and DeLeonardis) have filed separate summary judgment motions.[1] The latter argue that they are entitled to summary judgment on Okoro's claims because Okoro cannot prove that the stones

---

[1] Derive evidently was never served with summons. The claims against him are dismissed pursuant to Federal Rule of Civil Procedure 4(m).

ever existed; he cannot prove that either of these defendants took the stones or ever had possession of them; his claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994); and these defendants are insulated from liability under the doctrine of qualified immunity. The federal defendants do not challenge the existence of the stones or the money. But they do seek summary judgment on the ground that Okoro cannot prove that either of them actually took the stones; they also argue that Okoro can and must proceed under the Federal Tort Claims Act against the United States. Summary judgment for either set of defendants is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

In ruling on the defendants' last motion for summary judgment, we rejected both the argument that Okoro failed to demonstrate the existence of the stones and the argument that *Heck* barred Okoro's claims. *Okoro v. Bohman*, No. 94 C 6343, 2000 WL 1100340, at *1-2 (N.D. Ill. Aug. 4, 2000). For the same reasons, we do so again today. As to the latter, Okoro's claims here do not necessarily imply the invalidity of his conviction. As to the former, Okoro and his wife Bessie testified at their depositions that the stones existed, and Bessie testified that she saw one or more of the agents leaving her house carrying bags containing the stones and Okoro's wallet. Although their deposition transcripts are riddled with inconsistencies and back-tracking, the Court cannot determine credibility issues on summary judgment; it is the jury's job to decide whether Okoro's story, as corroborated by his wife, holds water. *See, e.g., Stewart v. RCA Corp.*, 790 F.2d 624, 628 (7th Cir. 1986) (a judge "may not assess the credibility of witnesses to decide a motion for summary judgment"); 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, FEDERAL PRACTICE AND PROCEDURE §2726 (3d ed. 1998) (even if a plaintiff's story

2

seems to the court to be fantastic, summary judgment is improper because only a jury should determine the plaintiff's credibility).

We similarly reject the implication that Okoro must pin the blame on one or more of the defendants specifically. The record evidence shows that all of the defendants participated in Okoro's arrest (which took place at his home) or the search of the home – whether in a supervisory capacity or in a more hands-on way. And, as we have already stated, Bessie Okoro testified that she saw one or more of the agents carrying clear bags out of the house, which she (and presumably everyone there) could see contained, among other things, Okoro's gemstones and his wallet. This would be enough, assuming Okoro can prove these events at trial, to impose liability under *Bivens*. *See Black v. Lane*, 22 F.3d 1395, 1401 (7th Cir. 1991), cited in *Gossmeyer v. McDonald*, 128 F.3d 481, 494 (7th Cir. 1997)). The same evidence precludes us from entering summary judgment on Okoro's Rule 41(e); from this evidence a jury could conclude that one or more of the named defendants actually took Okoro's property. Contrary to the defendants' suggestion, the fact that Okoro learned the names of most of the defendants through his trial attorney's discovery efforts does not necessarily mean Okoro is lying. It is not at all difficult to imagine that in executing the arrest, the defendants failed to introduce themselves to the Okoros, and Okoro testified that he was unable to get a good look at many of the defendants because, as they were searching his house and carting his things away he was lying face down on the floor with his hands cuffed behind his back. The evidence of the defendants' participation in the arrest is sufficient to overcome defendants' motion.

The federal defendants also argue that Okoro should pursue his claim under the Federal Tort Claims Act; indeed, they argue that the FTCA, which provides an adequate postdeprivation

3

remedy, bars his *Bivens* claim. Interestingly, the CPD defendants did not make the argument that the existence of a postdeprivation remedy bars what Okoro has called a *Bivens* claim (actually a §1983 claim) against them, though they should have, because it does. *Hudson v. Palmer* holds that "an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause . . . if a meaningful postdeprivation remedy for the loss is available." 468 U.S. 517, 533 (1984). Allegations that the defendants' misconduct occurred under or because of an established state policy or procedure might compel a different result. *See Logan v. Zimmerman Brush Co.*, 455 U.S. 422 (1982), *quoted in Hudson*, 468 U.S. at 532 ("postdeprivation remedies do not satisfy due process where a deprivation is caused by conduct pursuant to established state procedure, rather than random and unauthorized action"); *Zinermon v. Burch*, 494 U.S. 113, 136-37 (1990) (postdeprivation remedies are insufficient to protect plaintiffs' due process rights if the deprivation was predictable, predeprivation process was possible, and the conduct was not unauthorized). But Okoro's complaint contains no such allegations; his complaint supports, at best, the theory that this was a random and unauthorized act. Because of the availability of a postdeprivation remedy (either under Rule 41(e) or state common law), what happened to Okoro cannot amount to a violation of due process. The state defendants are therefore entitled to judgment as a matter of law on Count 2 of his amended complaint.

Although the question is a bit less clear on the federal level, *see Carlson v. Green*, 446 U.S. 14, 18-20 (1980), we find that the same analysis applies with equal force to the claim against Bowman and Dodds. The FTCA provides a "meaningful postdeprivation remedy for the loss" of Okoro's stones and money, *Del Raine v. Williford*, 32 F.3d 1024, 1046 (7th Cir. 1994).

4

And even if it did not, Okoro concedes that "Rule 41(e) offers an appropriate post-deprivation remedy." Memorandum in Opposition to Defendants' Motion for Summary Judgment, p. 18. The federal defendants, like the CPD defendants, are therefore entitled to summary judgment on Count 2 of Okoro's amended complaint.

Finally, the CPD defendants argue that they are entitled to qualified immunity; in light of our ruling above, we consider the defense in connection with Okoro's Rule 41(e) claim only. Assuming qualified immunity applies to that claim, the doctrine shields state actors from liability for constitutional violations and will attach to "government officials performing discretionary functions ... insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1981); *Williams v. Anderson*, 959 F.2d 1411, 1414 (7th Cir. 1992). The test for whether the doctrine applies is largely objective: "the relevant question ... is the objective (albeit fact-specific) question whether a reasonable officer could have believed [that his actions were] lawful, in light of clearly established law and the information the ... officers possessed." *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). The defendants do not dispute that the law was clearly established. They argue, essentially, that Okoro's story is not worthy of belief. *See* Defendant Callaghan and DeLeonardis' Memorandum in Support of Their Motion for Summary Judgment, p. 14. Because that question presents, as we have discussed, genuine issues of material fact, summary judgment on qualified immunity is inappropriate.

## CONCLUSION

For the reasons explained above, the Court grants in part and denies in part the Federal Defendants' motion for summary judgment [Docket No. 124 ], and grants in part and denies in

part Defendants Callaghan and DeLeonardis' motion for summary judgment [Docket No. 121]; the motions are granted as to Count 2 of Okoro's amended complaint but otherwise denied. The claims against Jack Derive are dismissed pursuant to Rule 4(m). The date for filing the final pretrial order is extended to October 12, 2001. The case is set for a status hearing on September 21, 2001 at 9:30 a.m. for the purpose of addressing whether the plaintiff is entitled to a jury trial on his remaining claim.

Dated: September 10, 2001

MATTHEW F. KENNELLY
United States District Judge